THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EQUAL EMPLOYMENT OPPPORTUNITY COMISSION,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>BFS GROUP LLC DBA BFS GROUP OF WASHINGTON LLC d/b/a BUILDERS FIRSTSOURCE,<br><br>　　　　　　　　Defendant. | CASE NO. C24-1562-JCC<br><br>ORDER |

　　　　This matter comes before the Court on Plaintiff's motion for a protective order and to quash Defendant's subpoena (Dkt. No. 13). Having thoroughly considered the briefing and the relevant record, the Court DENIES the motion for the reasons explained herein.

I.　　BACKGROUND

　　　　Plaintiff Equal Employment Opportunity Commission ("EEOC") brings this discrimination action on behalf of employee Enrique Tellez, asserting that Defendant violated the Age Discrimination in Employment Act and the Americans with Disabilities Act ("ADA") when terminating Mr. Tellez's employment. (*See* Dkt. No. 1 at 1–2.) In 2023, Hire Quest, a third-party staffing company, placed Mr. Tellez with Defendant to work as an assembler at its

Arlington, Washington, truss facility. (*Id.* at 4–5.) Mr. Tellez was terminated shortly after arriving for his first day because, according to Defendant's general manager, she observed Mr. Tellez with a knee impairment/limp that would not allow him to perform required tasks. (*Id.* at 5.)

However, Plaintiff alleges this was pretextual and, in fact, Defendant terminated Mr. Tellez due to his age and because Defendant summarily regarded him as disabled. (*Id.* at 6.) Plaintiff brought suit on Mr. Tellez's behalf in September 2024, after issuing its determination finding to Defendant. (*See generally id.*).

In March 2025, Defendant noticed a third-party subpoena for several categories of information related to Mr. Tellez, to be served upon Hire Quest. (*See* Dkt. No. 14-1 at 1–7.) The parties met and conferred, and Plaintiff agreed to allow Defendant to seek categories 1–9 from Hire Quest but Plaintiff took issue with the information requested in categories 10–12. (*See* Dkt. No. 13 at 3.) Those categories seek Hire Quest's records pertaining to Mr. Tellez's injuries and illnesses from 2021–2023 and any accommodations that Mr. Tellez requested or received during any Hire Quest work assignment. (Dkt. No. 14-1 at 7.) Plaintiff contends the health and accommodation information sought is irrelevant and intrusive. (Dkt. No. 13 at 4.) Thus, Plaintiff asks the Court to quash the subpoena or, alternatively, modify the subpoena to strike categories 10–12 and enter an order protecting Hire Quest from disclosing the information requested. (*See id.* at 1, 3–4.)

## II. DISCUSSION

### A. Legal Standard

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).[1]

---

[1] District courts are vested with broad discretion in determining whether a protective order is appropriate and, if so, what degree of protection is warranted. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984); *Phillips ex rel. Estate of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211–12 (9th Cir. 2002).

1    Relevant information is "any matter that bears on, or that reasonably could lead to other matter[s]
2    that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*,
3    437 U.S. 340, 351 (1978). On a motion to quash or for a protective order, the Court "may, for
4    good cause, issue an order to protect a party or person from annoyance, embarrassment,
5    oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The party seeking to limit
6    discovery has the burden of proving "good cause," which requires a showing "that specific
7    prejudice or harm will result" if the protective order is not granted. *In re Roman Catholic*
8    *Archbishop of Portland in Or.*, 661 F.3d 417, 424 (9th Cir. 2011). Similarly, a court may deny a
9    motion to quash or modify a subpoena if the moving party fails to show that compliance with the
10   subpoena would result in an undue burden. *See* Fed. R. Civ. P. 45(d)(3)(a)(iv).

**B. Defendant's Subpoena**

The Hire Quest subpoena seeks records "of any illness, injury, or impairment Enrique Tellez had between 2021 and 2023" (Category 10); "[r]ecords of Enrique Tellez's requests for accommodation for any work/job assignment for Hire Quest and/or its customers/clients" (Category 11); and "[r]ecords of any accommodations provided to Enrique Tellez to allow him to perform, or assist him in performing, any work/job assignment for Hire Quest and/or its customers/clients" (Category 12). (Dkt. No. 14-1 at 7.)

In general, "employment records from separate employers are not discoverable due to their highly private nature absent a specific showing by a defendant as to their relevance." *Scott v. Multicare Health Sys.*, 2019 WL 1559211, slip op. at 2 (W.D. Wash. 2019) (internal quotation and citation omitted). Thus, Defendant's showing of relevance must also outweigh Plaintiff's privacy interest. *Id.* As described below, Defendant has shown that the subpoenaed categories are relevant to this case, whereas Plaintiff has not shown that prejudice, undue burden, or other harm would arise from production.

    1. <u>Relevance</u>

Plaintiff contends Defendant has not demonstrated that Mr. Tellez's health records

ORDER
C24-1562-JCC
PAGE - 3

(Category 10) are relevant and is instead seeking "after-acquired" evidence to justify its termination decision. (Dkt. No. 13 at 7.) In support, Plaintiff points to cases where courts have quashed subpoenas to former or current employers where there was no specific showing of relevance to support its position. (*See id.* at 4–5.) But none are apt.

For example, Plaintiff cites to *Erwin v. OBI Seafoods*, (*id.* at 5), where the court quashed a subpoena seeking employment records from current and past employers to investigate a plaintiff's emotional distress claims (among others) after the defendant presented no evidence showing that the records would produce probative information. 2023 WL 4457153, slip op. at 3 (W.D. Wash. 2023). Whereas Mr. Tellez was selected **by** Hire Quest **to work at** Defendant's facility, where the events giving rise to this lawsuit occurred. (*See* Dkt. No. 13 at 3.) Contrast this with the companies that the *Erwin* defendant sought to subpoena—unrelated employers. *See* 2023 WL 4457153, slip op. at 2. The other cases Plaintiff relies upon, (Dkt. No. 13 at 5–7), are similarly inapt.

Plaintiff also argues that Defendant is engaging in a "fishing expedition" for records to "retroactively justify" its decision to terminate Mr. Tellez. (Dkt. No. 13 at 7.) However, unlike in *Erwin* where the defendant's mere conclusory declaration that there existed evidence of the plaintiff's emotional distress in the workplace was nevertheless insufficient to demonstrate relevance, *see* 2023 WL 4457153 at 3, Defendant here has presented specific evidence. Defendant points to an EEOC investigative interview with Anna Jacobsen, the general manager of Defendant's Arlington tress facility, regarding the events leading to its termination decision. (*See* Dkt. No. 17-1 at 14–17.) During the interview, Ms. Jacobsen recounted her interaction with Mr. Tellez and stated that she "observed him having extreme knee pain[,]" limping while walking, and being "unsteady[.]" (*Id.* at 14.)

This evinces Defendant's specific concerns regarding Mr. Tellez's physical condition. Defendant's proffered job responsibilities include continual standing, walking, and lifting items up to 25 pounds and occasional lifting and moving items up to 100 pounds. (Dkt. Nos. 16 at 2,

17-1 at 2–3.) Hire Quest's health records may tend to show whether Mr. Tellez was, indeed, physically qualified for the position. Also, the records requested are limited to years 2021–2023. (*See* Dkt. No. 14-1 at 7.) This encompasses only the year in which Mr. Tellez was terminated and the two years prior. (*See* Dkt. No. 1 at 4.) Therefore, they are tailored to be within a relevant time period.

Turning to accommodation records (Categories 11 and 12), Plaintiff asserts Defendant discriminated against Mr. Tellez because it regarded him as disabled, in violation of the ADA. (*Id.* at 6.) In support, Plaintiff alleges that (1)"Tellez could perform all essential job functions of Defendant's Assembler I position at the Arlington truss facility without reasonable accommodation," (2) Tellez was qualified for the position "as demonstrated by Tellez's work in physically demanding jobs before and after June 2023," (3) "Tellez did not and does not experience knee pain that impairs his daily life activities or his ability to fulfill the job functions of physically demanding jobs," and (4) "Tellez does not limp." (*Id.* at 4–5.)

Indeed, the ADA prohibits certain entities from discriminating against "a qualified individual on the basis of a disability" in employment. 42 U.S.C. § 12112(a). This prohibition includes discrimination against individuals who are "regarded as having such an impairment." *See id.* at § 12102(1)(C); *Weaving v. City of Hillsboro*, 763 F.3d 1106, 1111 (9th Cir. 2014). To establish a "regarded as" ADA claim, Plaintiff must show that the individual was qualified for the position and "was able to perform the essential functions of the job without accommodation." *Taylor v. Health*, 675 F. App'x 676, 677 (9th Cir. 2017).

Thus, in defending the ADA claim, Defendant must rebut Plaintiff's allegations. *See Curley v. City of N. Las Vegas*, 772 F.3d 629, 632 (9th Cir. 2014) (holding that the *McDonnell Douglas v. Green*, 411 U.S. 792, 802–04 (1973), framework applies to ADA claims, which requires the plaintiff to first make a prima facie case showing discrimination, then the burden shifts to the defendant to demonstrate that it had a legitimate reason for its decision, and if the defendant meets its burden, the burden shifts again to the plaintiff to show that the reason was

pretextual). Defendant argues that, to do so, it is entitled to the subpoenaed information because it is necessary to "explore whether the EEOC can satisfy an essential element of its ADA claim." (Dkt. No. 16 at 9.) Furthermore, Defendant may use the discovery process to *ascertain* evidence to rebut Plaintiff's allegations. *See Coleman v. Quaker Oats Co.* 232 F.3d 1271, 1292 (9th Cir. 2000) ("A complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations.").

Nevertheless, Plaintiff contends that Hire Quest's records pertaining to Mr. Tellez's requested or received accommodations for prior work assignments are irrelevant because Plaintiff is not bringing a failure to accommodate ADA claim. (Dkt. No. 13 at 9–10.) The argument misses the mark. To establish a "regarded as" ADA claim, such as the one here, Plaintiff must show that the individual "was able to perform the essential functions of the job without accommodation." *See Taylor*, 675 F. App'x at 677. Since Plaintiff alleges that Mr. Tellez was able to perform the duties of Defendant's job without accommodations, (Dkt. No. 1 at 4), and the ability to work without accommodations is relevant to Plaintiff's ADA claim, it is reasonable for Defendant to seek these records to assess Plaintiff's allegations.[2]

Fundamentally, given the nature of Defendant's proffered job responsibilities, records providing information on Mr. Tellez's health and accommodation history are relevant.

### 2. Burden

Even if the documents at issue are relevant, the Court must balance Defendant's interest in the information against Plaintiff's privacy interest. *Abu v. Piramco Seat-Tac Inc.*, 2009 WL 279036, slip op. at 3 (W.D. Wash. 2009); *see Mt. Hope Church v. Bash Back!*, 705 F.3d 418, 429 (9th Cir. 2012) (applying Rule 26 undue burden standard to third-party production).

---

[2] Plaintiff also argues that Defendant is seeking information from Categories 10–12 to attack Plaintiff's and Mr. Tellez's credibility. (*See* Dkt. No. 13 at 8–11.) However, Defendant does not appear to be attempting to attack Plaintiff's or Mr. Tellez's credibility, and instead represents that it is seeking the records to defend against Plaintiff's ADA claim. (*See* Dkt. No. 16 at 10–11.) Therefore, Plaintiff's argument that Defendant should not be able to seek these records to challenge its credibility is meritless.

ORDER
C24-1562-JCC
PAGE - 6

Plaintiff argues that the information contained in Mr. Tellez's health and accommodation records are sensitive and their production would be burdensome and intrusive. (Dkt. No. 13 at 9, 11.) While the Ninth Circuit has not addressed the right to privacy of medical records within ADA discovery disputes, courts in this district have generally ruled that when a plaintiff's health is at issue, the plaintiff waives the right to privacy of medical records. *See, e.g., EEOC v. Cheesecake Factory*, 2017 WL 3887460, slip op. at 7 (W.D. Wash. 2017) (internal quotation and citation omitted) (ruling that a plaintiff waived his right to medical privacy where he had put his medical condition at issue in the case by referring to his health issues and disability). Other courts have also rejected arguments that a plaintiff's privacy interest outweighs disclosure interests when there is a reasonable expectation that the information would arise in litigation and the plaintiff did not show that the records contained "particularly embarrassing or revealing" information. *Abu*, 2009 WL 279036, slip op. at 3.

Although health records may contain sensitive information, Plaintiff put Mr. Tellez's physical condition at issue by alleging that he does not have impairing knee pain or a limp. (Dkt. No. 1 at 5.) As such, it would be reasonable for Plaintiff to expect such issues to be disclosed in the litigation. Plaintiff has not otherwise demonstrated that the information contained in the records would be "particularly embarrassing" to Mr. Tellez. *See Abu*, 2009 WL 279036, slip op. at 3.[3] Defendant's request for information is not unduly burdensome.

**III.   CONCLUSION**

Accordingly, for the reasons stated above, the Court DENIES Plaintiff's motion (Dkt. No. 13).

---

[3] Plaintiff further argues that requiring Hire Quest to produce the information in Categories 10–12 could negatively impact Mr. Tellez's employment opportunities because it would inform Hire Quest that Mr. Tellez is involved in an employment dispute. (Dkt. No. 13 at 11.) However, Mr. Tellez is no longer employed by Hire Quest, (Dkt. No. 16 at 6), and regardless, this would amount to prohibited retaliation. *See Abu*, 2009 WL 279036, slip op. at 3 (ruling that plaintiffs are "statutorily protected from retaliation for filing [a] lawsuit"). Therefore, Defendant's interest in obtaining the information contained in the requested categories outweighs Plaintiff's concerns.

DATED this 13th day of May 2025.

John C. Coughenour
UNITED STATES DISTRICT JUDGE